## The People v. Paul Ackerman.

*Liquor traffic—Legal holidays—Liability for keeping saloon open.*

1. The term "all legal holidays," as used in section 17 of the liquor law of 1887, includes *all* days set apart by the Governor or President of the United States as days for fasting and prayer, or of thanksgiving.

2. The courts will take judicial notice of proclamations by the Governor or President of the United States, setting apart days for fasting and prayer or thanksgiving, and, as the same are published in the daily and weekly newspapers, it is not to be presumed that any citizen is ignorant of them; nor will liquor dealers, or other business men, be permitted to plead such ignorance as an excuse for a non-compliance with, or violation of, the statutes relating to legal holidays.

3. All persons engaged in the sale of liquor in an open saloon on a legal holiday are made principals by section 24 of the liquor law of 1887, and all may be punished for the violation of the statute if proceeded against and convicted.

4. Where all of the facts essential to a conviction are admitted, there is nothing for a jury to pass upon, and it is not error for the court to direct a verdict of guilty. *People v. Richmond,* 59 Mich. 573.

Exceptions before judgment from superior court of Grand Rapids. (Burlingame, J.) Argued May 1, 1890. Decided May 9, 1890.

Respondent was convicted of having kept open, as the agent of Henry Huber, the saloon of his principal on a legal holiday. Conviction affirmed. The facts are stated in the opinion.

*L. E. Carroll,* for respondent.

*B. W. Huston,* Attorney General, and *W. J. Stuart,* Prosecuting Attorney (*Stuart, Knappen & Weaver,* of counsel), for the people.

MORSE, J., The defendant was convicted in the superior court of Grand Rapids upon an information under the liquor law of 1887 of having kept open, as the agent of one Henry Huber, the saloon of said Huber upon a legal holiday, to wit, April 30, 1889.

Two objections only are urged against the legality of this conviction:

1. That April 30, 1889, was not a legal holiday within the intent and meaning of the statute.

2. That, as there was but one business carried on at this saloon, and that by Huber, and as there could be but one violation of the law in keeping the saloon open on that day, and Huber had been convicted of this same offense, the law had been vindicated, and the punishment meted out and justice satisfied; and, as Ackerman was there working for Huber, who was present, and under Huber's direction, he should have been acquitted.

1. The statute defines a legal holiday as follows:

"SEC. 1591. The following days, viz., the first day of January, commonly called 'New Year's Day,' the twenty-second day of February, commonly called 'Washington's Birthday,' the fourth day of July, the twenty-fifth day of December, commonly called 'Christmas Day,' the thirtieth day of May, commonly called 'Decoration Day,' and any day appointed or recommended by the Governor of this State or the President of the United States as a day of fasting and prayer or thanksgiving, shall, for the purposes of presenting for payment or acceptance, and of protesting notice of the dishonor of, bills of exchange, bank checks, and promissory notes, made after this act shall take effect, also for the holding of courts, be treated and considered as the first day of the week, commonly called 'Sunday.'" How. Stat. p. 455.

Upon any and all of these days the liquor law of 1887 provides that the saloons shall be closed, as the holidays defined as "legal holidays" in the act of 1887 are the holidays prescribed by the statute above quoted. See *Reithmiller v. People,* 44 Mich. 280; Act No. 313, Laws of 1887, § 17.

The 30th of April, 1889, was a legal holiday within the meaning of both statutes. The use of the words "any day," instead of "the day," shows that the intent of the Legislature was not to limit the holidays to the general Thanksgiving day, which is now by proclamation made every year a holiday,—a custom extending back beyond the memory of the present generation,—but to *all* days designated either by the President or the Governor as a day of "fasting and prayer or thanksgiving." The 30th of April, 1889, was known as "Centennial Day," and by proclamation of the Governor of this State, dated April 19, 1889, was specially set apart and recommended as a day of general "thanksgiving and praise to Almighty God." The courts take judicial notice of such proclamations, and as they are published in the newspapers, weekly and daily, it is not to be presumed that any citizen is ignorant of them; nor will liquor dealers, or other business men, be permitted to plead such ignorance in excuse for a non-compliance with, or violation of, the statutes relating to legal holidays.

2. The second objection is also untenable. The statute (Act No. 313, Laws of 1887, § 24) provides that—

"All persons engaged in the business of selling, or keeping for sale, any of the liquors mentioned in this act, whether as owner or as clerk, agent, or servant or employé, shall be equally liable as principals for any violation of any of the provisions of this act, and any person or principal shall be liable for the acts of his clerk, servant, agent, or employé for any violation of the provisions of this act."

The keeping open of this saloon on April 30, 1889, was but one offense for the whole day.

"The saloon is to be closed all day, and the opening of the same once or a dozen times is the same in the eye of the law. If it is not closed all day, the law is infracted, and if it is open all day the law is broken. The statute is violated by its not being closed, and the law

does not ordinarily divide a day unless the intent of the Legislature is clear." *People v. Cox*, 70 Mich. 250.

The testimony was undisputed that Huber, the proprietor of the saloon, was present and engaged in keeping the saloon open, and that respondent and two other bartenders were there in the capacity of clerks, working for and under the direction of Huber, dispensing drinks; that respondent did not open the saloon in the sense of a manual opening of the door, and all the liquor he sold was while Huber was present. It also appeared that Huber had been tried and convicted of the offense of keeping this saloon open on that day, and that the other two bar-tenders had been arrested for the same offense, but not tried. It is urged that the reasonable construction of the statute is that either the agent or the proprietor may be convicted of and punished for the offense, but that when one of them is so convicted and punished it is a bar to the conviction of the other. We do not think so. All engaged in the selling of liquor in an open saloon on an interdicted day are made principals by the law, and the courts are not concerned with, and will not inquire into, the question of principal or agent, and all may be punished for the violation of the statute if proceeded against and convicted. Nor will it matter who opened the door. Those who are selling behind the bar, or waiting upon customers in any part of the saloon, are equally guilty of keeping it open. There is no injustice in this holding. The respondent was not obliged to be in the saloon on that day, and must be considered to have known the law, and that his acts were unlawful.

As the law also punishes the proprietor for the acts of his clerk or agent, it is suggested that under this interpretation of the statute Huber might be convicted and punished for the act of each of his three bar-tenders on this day and his own act, and thereby be punished four

times for the same offense upon one day.   This is not so.
Huber can only be convicted and punished once for keep-
ing his saloon open on April 30, 1889, or any other legal
holiday.   One conviction would be a bar to any other for
the same offense upon the same day.   But this does not pre-
clude the arrest and conviction of each of his three clerks for
the same offense,—for a transaction in which they aided,
and are made principals by the statute.   Any number of
persons concerned  therein  may be convicted of the same
offense, if ·their  acts in  law  make them  principals, and
the conviction of one is no  bar to  the conviction of the
others.

3. A further  point  is raised that  the  judge  erred in
directing a verdict of guilty; that  the  verdict thus rend-
ered  was  not  the  verdict  of  the  jury,  but  of  the
court.   This point has been settled against the respond-
ent.   "As the  defendant  himself had  sworn  to his own
guilt," and the facts were admitted, there was nothing for
the jury to pass upon.   *People v. Richmond,* 59 Mich.
573.   See, also, *People v. Lyng,* 74 Id. 579.

The conviction is affirmed.

The other Justices concurred.