THE PEOPLE v. LULU MORTIMER.

*Jury must regard instructions as to the law—Assault by shooting—Uncontrollable anger does not excuse violence.*

In Michigan a trial court must instruct the jury as to the law in criminal as well as in civil cases, and it is the jury's duty to accept the ruling.

It is an assault upon a person to intentionally shoot him with a pistol loaded with ball.

Uncontrollable anger and excitement do not excuse the commission of desperate acts of violence, whatever the provocation, and render them less liable to punishment.

Exceptions from Recorder's Court of Detroit. Submitted January 26. Decided April 5.

INFORMATION for assault with intent to kill. Respondent was convicted of assault, and recommended to mercy. Conviction affirmed.

Attorney General *Jacob J. Van Riper* for the People.

*Edwin F. Conely* (*Maybury & Conely*) for respondent.

CAMPBELL, J. Respondent was indicted for an assault with intent to murder one George C. Morris. The evidence, and respondent's statement in her own behalf, showed that she went to his place of business having a loaded revolver with her, and that they had some conversation which made her angry, and she shot him in the head with a bullet, which produced a surface injury but no dangerous harm. The jury found her guilty of an assault only, without the felonious intent charged. She now brings the case before us on exceptions, claiming the jury were not properly instructed.

The objections taken are in substance that the court charged them that if they believed the evidence they must find her guilty of an assault, and refused to charge on a theory that she might be found in a mental condition which would involve no guilt.

Upon the first question the exception can only be maintained on the theory that the jury may disregard the law and the judge should so leave the case in their hands. The argument before us took the broad ground that it was the right of the jury, if they saw fit, to find there was no assault.

In this State in criminal as well as in civil cases, it is the duty of the court to instruct the jury upon the law, and it is the duty of the jury to accept the ruling. *Hamilton v. People* 29 Mich. 173. It is no doubt in their power to disregard evidence, and to acquit persons whom they know to be guilty. The judge in this case did not dispute but admitted they had such power, but he told them at the same time what their duty was.

There is no room for discussion on the question whether intentionally shooting a person with a pistol loaded with ball is an assault. It would be absurd to spend time upon it. The fact was not only shown by evidence on which there was no conflict, but stated by the prisoner herself to the jury. The only question which could arise was as to the felonious intent and that the jury found in her favor.

There was no evidence or claim of insanity. But a charge was asked in this language, and refused :

" If the jury find from the evidence that defendant by reason of the immediate conduct of Morris toward her or the relations which had existed between them, the late conduct of Morris in breaking up those relations to a more or less extent, the affection she had for him, the jealousy excited in her by the reports which came to her about his going with another girl, his treatment of her about it when questioned, and the various other circumstances of the case, was in fact at the time of and just previous to the shooting without control of her will, then she is not guilty of an offence, and she should be acquitted."

The facts referred to as appearing on the trial were that Morris and defendant, although not living together in one house, had for some time had illicit relations at her various places of abode, and he had on some occasions and quite recently treated her unkindly, and used more or less personal violence, on Monday, July 19, 1880, which was the day before the shooting. On that Monday, according to her statement, she told him he would never whip her any more, and on that same day she purchased the revolver. Her statement is that when she visited the store of Morris it was with the intention of bidding him good-bye, and that something which he said, but which she does not state, angered her and she shot him. Morris corroborates her story as to the purpose of her coming ; and states that he desired her to leave the office, but she was unwilling to do so without his sitting down, which he did. She asked him with whom he went to the Cleveland races, and he told her it was none of her business. She said he went with a woman whom she named, and would make it her business,

and thereupon shot him. He stated on cross-examination that he was very angry when she came in, and used harsh language.

There can be no doubt that Morris' conduct was such as to be very offensive and exasperating, and that respondent was naturally made angry and excited by it. The illicit character of their relations would not tend to lessen the excitement. But passion and insanity are very different things, and whatever indulgence the law may extend to persons under provocation, it does not treat them as freed from criminal responsibility. Those who have not lost control of their reason by mental unsoundness are bound to control their tempers and restrain their passions, and are liable to the law if they do not. Where persons allow their anger to lead them so far as to make them reckless, the fact that they have become at last too infuriated to keep them from mischief is merely the result of not applying restraint in season. There would be no safety for society if people could with impunity lash themselves into fury, and then do desperate acts of violence. That condition which springs from undisciplined and unbridled passion is clearly within legal as well as moral censure and punishment. *People v. Finley* 38 Mich. 482; *Welch v. Ware* 32 Mich. 77.

The transaction was one of those unfortunate crimes which are too often the sequel of such relations as these parties occupied; and the bad conduct of the party injured cannot change the bearing of the facts against the prisoner beyond the indulgence which the jury seems to have yielded to the provocation and circumstances as affecting the murderous intent. They certainly went as far as they could go, without leaving the law out of view. The exercise of compassion to those who have broken the law may have some place in measuring punishment, but cannot properly prevent conviction.

There was no error in the proceeding, and it must be certified to the court below that judgment should be rendered accordingly.

The other Justices concurred.